IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH JANE STEWART,                    6:13-cv-00311-BR

        Plaintiff,                 OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


**KATHRYN TASSINARI**
**ROBERT A. BARON**
Harder Wells Baron & Manning, PC
474 Willamette Street
Suite 200
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case. No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**HEATHER L. GRIFFITH**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3709

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Sarah Jane Stewart seeks judicial review of a
final decision of the Commissioner of the Social Security
Administration (SSA) in which she denied Plaintiff's applications
for Disability Insurance Benefits (DIB) under Title II of the
Social Security Act and Supplemental Security Income (SSI)
payments under Title XVI.

This Court has jurisdiction to review the Commissioner's
decision pursuant to 42 U.S.C. § 405(g).  Following a thorough
review of the record, the Court **REVERSES** the decision of the
Commissioner and **REMANDS** this matter pursuant to sentence four of
42 U.S.C. § 405(g) for the calculation and award of benefits.

### ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on July 7, 2009.  Tr. 11.  The applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 28, 2011.  Tr. 11.  At the hearing Plaintiff was represented by an attorney.  Tr. 11.  Plaintiff and a Vocational Expert (VE) testified at the hearing.  Tr. 11.

The ALJ issued a decision on January 26, 2012, in which he found Plaintiff was not disabled and, therefore, is not entitled to benefits.  Tr. 21.  That decision became the final decision of the Commissioner on January 2, 2013, when the Appeals Council denied Plaintiff's request for review.  Tr. 2.

### BACKGROUND

Plaintiff was born on May 5, 1982, and was 29 years old at the time of the hearing.  Tr. 158.  Plaintiff has an eleventh-grade education.  Tr. 95-96.  She has past work experience as a caregiver.  Tr. 204.

Plaintiff alleges she has been disabled since November 9, 2008, due to a chronic-pain disorder, fear of people and crowds, long-term depression, back and neck pain, panic disorder, and a learning disability.  Tr. 203.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the

3 - OPINION AND ORDER

medical records, this Court adopts the ALJ's summary of the medical evidence.   *See* Tr. 13-21.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.   *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).   To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.   *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).   *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012).   Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."   *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.,* 574

F.3d 685, 690 (9th Cir. 2009)).  It is more than a "mere scintilla" of evidence but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520, 416.920.

Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling

(SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the

testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged
in substantial gainful activity since November 9, 2008, her
alleged onset date.  Tr. 13.

At Step Two the ALJ found Plaintiff has the severe
impairments of "panic disorder, with agoraphobia and social
phobia; major depressive disorder; obsessive-compulsive disorder;
borderline intellectual functioning; learning disorder, NOS;
[and] obesity."[2]  Tr. 13-14.

At Step Three the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any impairment in the Listing of
Impairments.  Tr. 14.  The ALJ found Plaintiff "has the residual
functional capacity to perform light exertion work with lifting
and carrying ten pounds frequently and twenty pounds
occasionally, sitting about six hours total per workday and

---

[2]    The Court notes the ALJ based his findings as to these
impairments on the medical diagnoses of Plaintiff that appear in
the record rather than statements in Plaintiff's applications.
*See* Tr. 13-14, 203.

standing and/or walking for about six hours total during an eight-hour workday, all with normal breaks.  She should avoid concentrated exposure to workplace hazards such as unprotected heights, unguarded moving machinery, etc.  Such work may not require more than brief, superficial interaction with the public or coworkers, or more than occasional interaction with supervisors.  [Plaintiff] can understand, remember, and carry out simple, routine instructions, but not more detailed ones.  She can perform unskilled work of simple, routine, repetitive tasks requiring only simple work-related decision making."  Tr. 16.

At Step Five the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as a basket filler, a garment sorter, or an eyeglass-frame polisher. Tr. 20.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly discredited Plaintiff's testimony; (2) improperly rejected the opinion of examining psychologist Judith Eckstein, Ph.D.; and (3) provided the VE with an incomplete hypothetical.

## I.   Plaintiff's testimony

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for discrediting her testimony.

In *Cotton v. Bowen* the Ninth Circuit established two

9 - OPINION AND ORDER

requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra,* 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

The consistency of claimant's daily activities with the medical record is relevant when determining the claimant's credibility and may constitute a clear and convincing reason to reject a claimant's testimony. *Smolen,* 80 F.3d at 1284.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded Plaintiff's statements

concerning the intensity, persistence, and limiting effects of her symptoms were not credible.  Tr. 17.

Plaintiff testified her mental problems of panic disorder, obsessive-compulsive disorder, and depression make it difficult for her to work.  Tr. 54.  Plaintiff stated she was first diagnosed with depression in her early teens, but her symptoms became more severe when her mother died in approximately 2006. Tr. 59.  Plaintiff stated she cries every other day for approximately twenty to thirty minutes and when she is finished she often does not know what caused her to cry.  Tr. 79.  She stated she experienced crying episodes lasting ten to fifteen minutes when she was working as a caregiver.  Tr 87.  Plaintiff also testified she has difficulty being in large crowds and gets panic attacks at least three times per week.   Tr. 58.

Since November 2008 Plaintiff has taken Paxil, Xanax, Klonopin, and Zoloft for her mental impairments, but testified they did not help.  Tr. 52-54.  In late 2009 Plaintiff stopped taking Paxil and stopped receiving mental-health counseling after she lost medical-insurance coverage.  Tr. 54, 60.

With respect to her obsessive-compulsive disorder, Plaintiff testified she is scared of germs and does not go anywhere unless she "absolutely [has] to go."  Tr. 58, 63-64.  She spends one-and-a-half hours every other day cleaning her house and disinfects the doorknobs and light switches with bleach twenty to

thirty times per day.  Tr. 74.

Plaintiff testified her daily activities consist of getting her nine-year old daughter off to school, cleaning her house, and playing on her computer.  Tr. 74-76.  Plaintiff stated her daughter helps her with her daily activities when she has a panic attack.  Tr. 78.

Plaintiff testified the last time she worked was as a caregiver was in August 2010.  Tr. 50.  As a caregiver, she assisted clients with showering, toileting, cooking, and running errands.  Tr. 51-52.

The ALJ concluded Plaintiff's alleged mental impairments do not support the severity she claimed at the hearing.  He noted although Plaintiff stated she has had depression since her teenage years and complains of having an "overwhelming" panic disorder for ten years, she has "never sought treatment aside from seeing a school counselor briefly and some recent counseling and psychotropic medication."  Tr. 17-18.  The ALJ also noted Plaintiff refilled her prescriptions for psychotropic medication "extremely infrequently."  Tr. 17.

SSR 96-7p, however, provides:

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

In addition, the Ninth Circuit has held "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

The Court notes examining physician Dr. Eckstein did not find Plaintiff's limited mental-health care history was remarkable.  In fact, Dr. Eckstein concluded Plaintiff "has developed both depression and anxiety symptoms over the last ten years or so which have become increasingly debilitating *despite her use of appropriate medication and recent counseling.*"  Tr. 293.  Furthermore, as noted, Plaintiff explained of her reason for not taking medications or receiving care more consistently was in part due to lack of medical insurance.  Tr. 54.

The ALJ also discredited Plaintiff's testimony because he concluded her daily activities including caring for her daughter, looking for work, and performing household chores was inconsistent with the alleged severity of her symptoms.  The ALJ did not, however, explain how these relatively limited daily activities, which Plaintiff performed in her own home, are evidence that she would be able to engage in substantial gainful activity, particularly in light of Plaintiff's diagnoses of obsessive-compulsive disorder and agoraphobia.  Tr. 294.

The ALJ also discredited Plaintiff's testimony because he

13- OPINION AND ORDER

found her former work as a caregiver was inconsistent with her
"alleged phobias of germs and vomiting" and was evidence of her
ability to work.  Tr. 18.  Plaintiff reported to Dr. Eckstein,
however, that because of these phobias, she is not able to go to
work if clients are sick, which makes her "unreliable."  Tr. 290.
Although Plaintiff has engaged in part-time work in the past, the
Court notes this work was relatively sporadic since her alleged
onset date of November 9, 2008, as Plaintiff did not earn any
wages in 2009 or 2011 and only $7,425.60 in 2010.  Tr. 169.
Accordingly, Plaintiff's past work history does not alone
establish a sufficient basis for discrediting Plaintiff's
testimony as to the severity of the symptoms of her mental-health
impairments.

The Court concludes on this record that the ALJ erred when
he did not provide clear and convincing reasons supported by
substantial evidence in the record for rejecting Plaintiff's
subjective symptom testimony.

## II. Medical opinion testimony of Dr. Eckstein

Plaintiff contends the ALJ erred when he did not give clear
and convincing reasons for rejecting the opinion of examining
psychologist, Dr. Eckstein.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings

setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).   When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.  Generally the more consistent an opinion is with the record as a whole, the more weight an opinion should be given. 20 C.F.R. § 416.927(c)(4).

Dr. Eckstein performed an Intellectual Assessment of Plaintiff on October 21, 2009.  Tr. 289-940.  Dr. Eckstein opined Plaintiff "falls into the borderline range of intellectual functioning with superior verbal skills compared to her performance abilities," that Plaintiff has an "impoverished" understanding of societal norms, and recommended Plaintiff take psychotropic medications.  Tr. 293.  Dr. Eckstein gave Plaintiff Axis I diagnoses of panic disorder with agoraphobia; social phobia; major depression, recurrent, severe without psychotic features; and phobias regarding germs and vomiting.  Tr. 294. Dr. Eckstein gave Plaintiff Axis II diagnoses of obsessive-compulsive personality disorder, "learning disorder NOS" and an Axis III diagnosis of obesity.  Tr. 294.  Dr. Eckstein assigned

Plaintiff a GAF 45.[3]  Tr. 294.

On September 19, 2011, Dr. Eckstein completed a Mental Residual Function Capacity Report and opined Plaintiff is markedly limited in her ability: to carry out detailed instructions; to maintain attention for extended periods of time; to perform activities within a schedule, maintain regular attendance; to work in coordination with or proximity to other without being distracted by them, complete a normal workday; and to accept instruction and respond appropriately to criticism from supervisors.  Tr. 365.  Dr. Eckstein also opined Plaintiff's mental impairments "of at least 2 years' duration . . . has caused more than a minimal limitation of [her] ability to do any basic work activity" and that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate."  Tr. 366.  The ALJ noted Dr. Eckstein's opinions, but gave them "little weight."  Tr. 19.

The ALJ instead gave "great weight" to the opinion of Disability Determination Services (DDS)[4] non-examining

---

[3]    A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  See DSM-1V at 34.

[4]    Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

psychological consultant, Dr. Kordell Kennemer, Psy.D.  Dr.
Kennemer completed a Psychiatric Review Technique Form in which
he found Plaintiff was moderately limited in "maintaining social
functioning" and "maintaining concentration, persistence or
pace." Tr. 277.  Dr. Kennermer also completed a Mental Residual
Functional Capacity Assessment form in which he found Plaintiff
was moderately limited in her ability to understand and remember
detailed instructions, to carry out detailed instructions, to
interact appropriately with the public, and to set realistic
goals or make plans independently or others.  Tr. 281-82.  Dr.
Kennermer concluded Plaintiff is "capable of understanding,
remembering and carrying out simple, routine instructions, but
not more detailed ones" and that she should be "in a routine work
setting not in close contact with general public or
co[-]workers." Tr. 283.  Dr. Kennemer also opined Plaintiff
would benefit from working with a vocational rehabilitation
specialist to help her set "realistic goals." Tr. 283.

The ALJ gave little weight to Dr. Eckstein's opinions
because "the limitations assessed by Dr. Eckstein are simply not
consistent with the functionality the claimant displays in her
daily activities, the lack of attempted sustained treatment, and
the claimant's actual performance of work during the period at
issue."  Tr. 19.  The Court has concluded these reasons are not
sufficient to discredit Plaintiff's testimony and are similarly

insufficient reasons for discrediting the opinion of Dr. Eckstein who is the only treating or examining physician on this record who provided an opinion as to the limiting effects of Plaintiff's alleged mental impairments.

Accordingly, the Court concludes on this record that the ALJ erred when he rejected Dr. Eckstein's opinion because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## III. The ALJ's hypothetical to the VE

Plaintiff contends the ALJ's hypothetical posed to the VE was inadequate because it did not include all of Plaintiff's limitations.  The Court already has concluded the ALJ erred when he rejected Plaintiff's testimony and the opinion of Dr. Eckstein.  These errors likely affected the ALJ's assessment of Plaintiff's RFC; and, in turn, the adequacy of the limitations included in the ALJ's hypothetical posed to the VE.  Accordingly, the Court concludes the ALJ's errors affected the VE's opinion as to Plaintiff's ability to perform jobs that exist in significant numbers in the national economy.

REMAND

Having found the ALJ erred in discrediting Plaintiff's testimony and the opinion of Dr. Eckstein, the Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The Court notes the ALJ posed three hypotheticals to the VE. The second hypothetical included the limitations set out in Plaintiff's RFC. Tr. 16, 96-99. Based on that hypothetical, the VE testified such a claimant could "perform work in the competitive economy," including work as a basket filler, garment sorter, and eyeglass-frame polisher. Tr. 99. The ALJ's third hypothetical to the VE that included many of the limitations determined by Dr. Eckstein. Tr. 99-100. In the third hypothetical, the claimant

> would be unable on a regular and sustained basis to carry out detailed instructions or maintain attention and concentration for extended periods of time to perform activities with a schedule or to work in coordination with or in proximity to other persons without being distracted by them. This person would be unable to complete a normal workday or a workweek without interruption from psychologically based symptoms and they would be unable to accept instructions or respond appropriately to criticism from their supervisors.

Tr. 99-100. In response to this hypothetical, the VE testified such a claimant would be precluded from gainful employment. Tr. 100.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

When determining whether the record is complete, the Ninth Circuit has held:

> [W]e notice that no vocational expert has
> been called upon to consider all of the
> testimony that is relevant to the case. This
> court recently wrote that "[i]n cases where
> the vocational expert has failed to address a
> claimant's limitations as established by
> improperly discredited evidence, we
> consistently have remanded for further
> proceedings rather than payment of benefits."
> In addition, the testimony given was not
> clear as to the duration of Ms. Bunnell's
> difficulties. To be found disabled, a
> claimant must be unable to work for twelve
> consecutive months. The duration of
> Ms. Bunnell's impairments must, therefore, be
> clarified.

*Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003)(citing

*Harman*, 211 F.3d at 1180)(internal citation omitted)).   Testimony

of a VE, however, as to the claimant's particular limitations is

not an absolute requirement if "it is clear from the record that

the claimant is unable to perform gainful employment in the

national economy."   *Benecke v. Barnhart*, 379 F.3d 587, 595-96

(9th Cir. 2004)(remanded for award and calculation of benefits

despite VE testimony as to the claimant's functional limitations

when the record clearly established the claimant could not

perform even sedentary work).

Here the VE testimony clearly establishes Plaintiff would be

unable to sustain any type of employment in the competitive

economy based on the limitations set out by Dr. Eckstein, the

only treating or examining physician in the record who provided

an opinion as to the limitations caused by Plaintiff's alleged

mental impairments.   Tr. 289-94.   Because the ALJ did not provide

legally sufficient reasons for discrediting the opinion of Dr.

Eckstein, the Court credits the opinion of Dr. Eckstein as true.

*See Benecke*, 379 F.3d at 594 (when "the ALJ fail[s] to provide

legally sufficient reasons for rejecting . . . [a] physician['s]

opinion[]," the court credits that opinion as true).   *See also*

*Lester*, 81 F.3d at 834 (improperly-rejected physician opinion is

credited as a matter of law).   Because the ALJ also failed to

21- OPINION AND ORDER

provide legally sufficient reasons for discrediting Plaintiff's subjective-symptom testimony, the Court credits her testimony as true. *Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).

On the basis of the opinion of Dr. Eckstein and the testimony of Plaintiff and the VE, the Court concludes this record establishes that Plaintiff cannot sustain work-related mental activities on a regular and continuing basis and, therefore, is disabled and entitled to benefits. Thus, additional proceedings "would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

IT IS SO ORDERED.

DATED this 15 day of April, 2014.

_____

ANNA J. BROWN

United States District